31.

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

Oct 3  1 20 PM '03

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Scott C. Traudt,           :
        Plaintiff,         :
                           :
    v.                     :     File No. 2:03-CV-180
                           :
F/V Luke and Sarah,        :
Wood Hollow Trawlers,      :
Inc., Neil Stoddard,       :
Sunderland Marine Mutual   :
Insurance Co.,             :
        Defendants.        :

OPINION AND ORDER
(Papers 11 and 21)

Plaintiff Scott Traudt brings this action, *pro se*, alleging that he sustained an injury to his left middle finger while working aboard the Fishing Vessel *Luke and Sarah* in the North Atlantic.  Traudt has alleged violations of both state and federal law, including violations of United States admiralty law and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  The defendants have moved to dismiss Traudt's complaint for lack of personal jurisdiction and improper service.  (Papers 11 and 21).  For the reasons set forth below, the motions to dismiss are GRANTED, and this case is DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal

31.

jurisdiction.

BACKGROUND

On March 24, 1997, in the course of conducting fishing operations on the *Luke and Sarah* in the North Atlantic, Traudt allegedly suffered a "crushing injury to his left middle finger while attempting to set the net of the *Luke*." (Paper 10, Amended Complaint, at ¶ 7). Traudt alleges that his injury was the result of another crew member "feeding the net chains out too fast, and allowing too much slack to build in the unsupported chain causing Traudt's left hand to be slammed into the port side stern when the chain fell free over the stern of the *Luke*." Id. at ¶ 9. The defendants in this case are the *Luke and Sarah*, "a commercial fishing trawler homeported [sic] in Galilee, RI"; Neil Stoddard, an insurance adjuster for defendant Intermodal Transport Services ("ITS"), allegedly of Raynham, Massachusetts; ITS; and Sunderland Marine Mutual Insurance Company, a British company that allegedly provides underwriting for the marine industry in the United States. (Paper 10, ¶¶ 2-5). At the time of his injury, Traudt was a resident of Warwick, Rhode

2

Island.  Traudt has since moved to Vermont.  Id. at ¶¶
1, 12.

Traudt claims that the owners and insurers of the
*Luke and Sarah* are obligated to pay him back pay,
maintenance, and lost compensation for his injury.  Id.
at ¶¶ 11, 90-98.  With respect to defendant Neil
Stoddard, Traudt alleges that Stoddard misled him as to
the amount to which he was entitled for his injury, and
led a conspiracy to "starve out" injured mariners to the
benefit of his employer, ITS, and its client,
Sunderland.  Id. at ¶¶ 29-38, 109-111.  Traudt also
includes ITS and Sunderland in his conspiracy claims,
alleging that they were either responsible for or worked
with Stoddard in depriving Traudt of his rightful
compensation.  Id. at ¶¶ 104-129.

<u>DISCUSSION</u>

I.  <u>Legal Standards</u>

The plaintiff bears the burden of proving the
defendant's amenability to suit in this forum.  <u>See</u>
<u>Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84
F.3d 560, 566 (2d Cir. 1996).  The nature of that burden
"varies depending on the procedural posture of the

AO 72A
(Rev.8/82)

litigation." <u>Ball v. Metallurgie Hoboken-Overpelt,
S.A.</u>, 902 F.2d 194, 197 (2d Cir. 1990). Prior to
discovery, a plaintiff faced with a challenge to
jurisdiction need make only a *prima facie* showing that
jurisdiction exists. See <u>Hoffritz for Cutlery, Inc. v.
Amajac, Ltd.</u>, 763 F.2d 55, 57 (2d Cir. 1985). That
showing may be made through a plaintiff's own affidavits
and supporting materials, "notwithstanding a
controverting presentation by the moving party." <u>Marine
Midland Bank, N.A. v. Miller</u>, 664 F.2d 899, 904 (2d Cir.
1981). "In the absence of an evidentiary hearing on the
jurisdictional allegations, or a trial on the merits,
all pleadings and affidavits are construed in the light
most favorable to plaintiff, and where doubts exist,
they are resolved in the plaintiff's favor." <u>Hoffritz</u>,
763 F.2d at 57.

In a suit brought pursuant to a federal statute,
state personal jurisdiction rules apply if the statute
does not specifically provide for national service of
process. <u>Mareno v. Rowe</u>, 910 F.2d 1043, 1046 (2d Cir.
1990) (citing <u>Omni Capital Int'l v. Rudolf Wolff & Co.</u>,
484 U.S. 97, 104- 05 (1987)); see also Fed. R. Civ. P.

4

4(k)(1)(A).  Here, Traudt has made allegations under
federal RICO and admiralty laws.[1]  While the Jones Act
(admiralty) does not provide for national service of
process, see Pike v. Clinton Fishpacking, Inc., 143 F.
Supp. 2d 162, 166 (D. Mass. 2001) (citing Handley v.
Indiana & Michigan Elec. Co., 732 F.2d 1265, 1270 (6th
Cir. 1984)), RICO arguably contains such a provision.
See 18 U.S.C. § 1965.  The relevant provision states in
part,

> (a)  Any civil action or proceeding under this
> chapter against any person may be instituted in
> the district court of the United States for any
> district in which such person resides, is
> found, has an agent, or transacts his affairs.

> (b) In any action . . . in any district court
> of the United States in which it is shown that
> the ends of justice require that other parties
> residing in any other district be brought
> before the court, the court may cause such
> parties to be summoned, and process for that
> purpose may be served in any judicial district
> of the United States by the marshal thereof.

> (c) In any civil or criminal action or
> proceeding instituted by the United States
> under this chapter in the district court of the
> United States for any judicial district,
> subpenas issued by such court to compel the

---

[1]  Although Traudt cites the Jones Act in the initial paragraph of his
amended complaint, none of his causes of action cite to maritime law.
(Paper 10).  Nonetheless, in light of this Court's duty to read pro se
complaints liberally, the Court will presume for the purpose of the
instant motions that Traudt is bringing some of his claims pursuant to
admiralty law.  See Haines v. Kerner, 404 U.S. 519, 529 (1972).

AO 72A
(Rev.8/82)

> attendance of witnesses may be served in any
> other judicial district . . . .
>
> (d) All other process in any action or
> proceeding under this chapter may be served on
> any person in any judicial district in which
> such person resides, is found, has an agent, or
> transacts his affairs.

18 U.S.C. § 1965.

Noting a split in the circuits with respect to
whether § 1965 provides for nationwide service of
process in all RICO cases, the Second Circuit has held
that, when read in its entirety, the statute "does not
provide for nationwide personal jurisdiction over every
defendant in every civil RICO case, no matter where the
defendant is found." PT United Can Co. Ltd. v. Crown
Cork & Seal Co., Inc., 138 F.3d 65, 70-71 (2d Cir. 1998)
(citation omitted). Instead, pursuant to subsection
(a), "a civil RICO action can only be brought in a
district court where personal jurisdiction based on
minimum contacts is established as to at least one
defendant." Id. at 71. If such jurisdiction over one
defendant is established, subsection (b) provides for
nationwide service and jurisdiction over "other parties"
not residing in the district upon a showing that the
"ends of justice" so require. Id. at 71-72.

6

Accordingly, Traudt must establish that this Court has personal jurisdiction over at least one of the defendants, as determined by the traditional minimum contacts analysis set forth below, before he may attempt to draw in other defendants by virtue of nationwide service.  Otherwise, no nationwide service may be applied under RICO.

As stated above, absent a specific statutory provision in federal law, personal jurisdiction is determined according to state law.  See, e.g., Klinghoffer v. S.N.C. Achille Lauro Altri-Gestione Montonave Achille Lauro In Amministrazione Straordinara, 937 F.2d 44, 50 (2d Cir. 1991) (in admiralty cases, forum law governs personal jurisdiction analysis).  The Vermont long arm statute, 12 V.S.A. § 913(b), provides:

> Upon the service [of process on a party outside the state], and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.

The Vermont Supreme Court has interpreted this language to permit the assertion of jurisdiction to "the full

7

extent allowed under the Due Process Clause." <u>Northern Aircraft, Inc. v. Reed</u>, 154 Vt. 36, 40 (1990).   Thus, this Court must determine whether the Due Process Clause permits the exercise of personal jurisdiction over the defendants.

Due process protects a non-resident defendant from becoming subject to the binding judgments of a forum with which it has had no significant contacts.   <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 471-72 (1985). In order for the exercise of personal jurisdiction to comport with due process, two inquiries must be undertaken and both must be satisfied: "minimum contacts" and "reasonableness."   <u>Metropolitan Life</u>, 84 F.3d at 568.   For purposes of the "minimum contacts" inquiry, a distinction is made between "specific jurisdiction" and "general jurisdiction."   <u>Id.</u> (citing <u>Helicopteros Nacionales de Columbia S.A. v. Hall</u>, 466 U.S. 408, 414-16 (1984)).   Specific jurisdiction exists where the suit arises out of or relates to the defendant's contacts with the forum.   <u>Burger King</u>, 471 U.S. at 475.   In order to show specific jurisdiction, the plaintiff must show some act by which the defendant

8

purposefully availed itself of the privilege of
conducting activities in the forum state, and that the
defendant could foresee being haled into court there.
Id.; World-Wide Volkswagen Corp. v. Woodson, 444 U.S.
286, 297 (1980).

In contrast, general jurisdiction "is based on the
defendant's general business contacts with the forum
state and permits a court to exercise its power in a
case where the subject matter of the suit is unrelated
to those contacts." Metropolitan Life, 84 F.3d at 568
(citing Helicopteros, 466 U.S. at 414-16, nn. 8-9).
Because general jurisdiction is not related to the
events giving rise to the suit, "courts impose a more
stringent minimum contacts test, requiring the plaintiff
to demonstrate the defendant's 'continuous and
systematic business contacts.'" Id. at 568, 572
(citations omitted) ("close case" found general
jurisdiction where defendant had $4 million in forum
sales over 6 years, relationship with dealers and
builders regarding its products, over 150 visits to
dealers and builders, and forum advertising). Here,
because the subject matter of the suit did not arise out

9

of or relate to the defendants' contacts with Vermont, this more stringent standard will apply.

The second stage of the due process inquiry, "reasonableness," asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice."  See International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The Supreme Court has held that the court must evaluate the following factors as part of this analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  See Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113-14 (1987); A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 83 (2d Cir. 1993) (discussing factors).  While a court may be inclined to exercise jurisdiction where the plaintiff has made a threshold showing of minimum contacts at the

10

first stage of the inquiry, it may decline such an
exercise where the defendant presents "a compelling case
that the presence of some other considerations would
render jurisdiction unreasonable." Burger King, 471
U.S. at 477.[2]

II.   Minimum Contacts

   A.   F/V *Luke and Sarah*

   In this case, as set forth below, the facts do not
support this Court's exercise of personal jurisdiction
over the defendants under either a minimum contacts or a
reasonableness analysis.  With respect to the *Luke and
Sarah*, Traudt has conceded that the Court has no
personal jurisdiction over the vessel under RICO.
(Paper 26 at 1).[3]  Personal jurisdiction over the *Luke*

_____

[2]  Traudt argues that if this Court finds that personal jurisdiction is
lacking, then it must determine if diversity jurisdiction is appropriate.
(Paper 26 at 2).  Diversity jurisdiction, however, is a form of subject
matter jurisdiction, and has no bearing on this Court's consideration of
the personal jurisdiction issue.  Assuming that this Court has
jurisdiction over the subject matter of this case, either by virtue of
Traudt's having raised federal claims or by virtue of the parties'
diversity of citizenship, the Court must still determine whether it has
personal jurisdiction over the defendants.  Without jurisdiction over the
defendants' persons, this Court cannot hear the case.  See, e.g.,
Wehringer v. Brannigan, 1990 WL 200563, at *1-*2 (S.D.N.Y. Nov. 30,
1990).

[3]  Although the complaint does not specify the nature of the action
against the F/V *Luke and Sarah*, Traudt suggests in his opposition to the
motions to dismiss that his action is *in rem*.  While
Traudt may be proceeding against the *Luke and Sarah in rem*, or perhaps
has named the vessel in an effort to obtain a maritime attachment and
garnishment, in either event process "may be served only within the
district."  Supplemental Rules for Certain Admiralty and Maritime Claims,

11

*and Sarah* is equally lacking on Traudt's remaining
claims.

The complaint alleges that the *Luke and Sarah*
sailed out of Rhode Island and operated in the North
Atlantic.  (Paper 10 at ¶¶ 2, 7).  There is no
suggestion in the pleadings that the *Luke and Sarah* had
any contact with Vermont, short of the fact that Traudt
chose to move to Vermont subsequent to his injury.
(Paper 13, Affidavit of James S. Thayer, Jr. at ¶ 11).
Moreover, there is no indication that the *Luke and Sarah*
will ever be in this district or be subject to service
of process here.  <u>See</u> <u>Itel Container Corp. v.</u>
<u>Atlantiktrafik Express Svc., Ltd.</u>, 686 F. Supp. 438, 444
n.10 (S.D.N.Y. 1988) (allowing plaintiffs to serve
process on vessel *in rem* at any time during pendency of
*in personam* action while plaintiffs awaited vessel's
return to district).  There is, therefore, no basis for
delaying dismissal of the *Luke and Sarah* without
prejudice for lack of personal jurisdiction.

B.  Wood Hollow Trawlers

Similarly, this Court has no grounds for exercising

---

Rule E(3)(a).

AO 72A
(Rev.8/82)

personal jurisdiction over Wood Hollow Trawlers

("Trawlers"), the alleged owner of the *Luke and Sarah*.

(Paper 1 at ¶ 2).  The uncontroverted affidavit of James

S. Thayer, Jr. establishes that Trawlers has never done

business in or had any other direct contacts with

Vermont.  (Paper 13).  Traudt responds that Trawlers

tried to conceal certain information from him while he

was a Vermont resident, and is therefore subject to

personal jurisdictional under the "effects test" set

forth in <u>Calder v. Jones</u>, 465 U.S. 783, 788 (1984).

(Paper 26 at 9).

Under <u>Calder</u>, intentional actions "directed at the

plaintiff and having sufficient impact upon it in the

forum" may give rise to jurisdiction.  <u>IMO Industries,</u>

<u>Inc. v. Kiekert AG</u>, 155 F.3d 254, 260 (3d Cir. 1998)

(citing <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770,

780 (1984)).  Jurisdiction is appropriate when the state

has been the "focal point both of the [alleged tort] and

of the harm suffered," the defendants knew the plaintiff

would suffer the "brunt" of the harm there, and they

"expressly aimed" their actions at the state.  <u>Chaiken</u>

<u>v. VV Pub. Corp.</u>, 119 F.3d 1018, 1029 (2d Cir. 1997);

13

see also LiButti v. United States, 178 F.3d 114, 123 (2d
Cir. 1999) (minimum contacts exist when defendant
"purposefully directed" harmful effects of its
activities at forum state).

Here, there is no indication that Trawlers
purposefully directed its allegedly harmful actions at
Vermont.  Traudt's relationship with Trawlers, both as a
worker and as a claimant, was initiated and developed
while both parties were in Rhode Island.  The alleged
attempt to conceal information, which took the form of
Trawlers' motion to quash a subpoena in a Rhode Island
state court action, was filed in Rhode Island with
copies to Traudt's Rhode Island counsel and Traudt's
Vermont residence.  See Attachment to Paper 27.  While
his dispute with Trawlers was on-going, Traudt moved to
Vermont.

In Calder, the Supreme Court found that the
defendants intentionally targeted the forum state.  465
U.S. at 791.  In contrast, here it was Traudt who
selected Vermont.  Any injury suffered here was the
result of Traudt's movement, and not Trawlers' targeted
efforts.  Without a showing of calculated targeting, it

14

would be unfair to the non-resident defendant to allow Traudt to move wherever he pleased, and by doing so dictate the forum in which his claims could be heard. Accordingly, the "effects test" does not apply here.

Furthermore, the Thayer affidavit shows that Trawlers' contacts fall far short of "continuous and systematic business contacts." Metropolitan Life, 84 F.3d at 568. Trawlers is a Rhode Island corporation with a principal place of business in Wakefield, Rhode Island. (Paper 13 at ¶ 2). As stated previously, Trawlers has never conducted business in Vermont. Id. at ¶ 3. Trawlers has never advertised in Vermont, never brought suit or consented to be sued in Vermont, and never operated the Luke and Sarah in Vermont. Id. at ¶¶ 4, 8, 9 and 11. Accordingly, Trawlers lacks contacts to Vermont sufficient for this Court to exercise personal jurisdiction.

C.  Stoddard and ITS

Traudt first argues that jurisdiction over defendants Neil Stoddard and ITS is proper because Trawlers' contacts are attributable to Stoddard and ITS. (Paper 26 at 10).  Traudt next argues that litigating in

15

Vermont would not be unreasonable since "Stoddard's employment has him traveling around New England adjusting claims for Sunderland et al." and ITS "supplies claims adjusters such as Stoddard nationwide." (Paper 26 at 15).  In support of the motion to dismiss, Stoddard has submitted an affidavit stating that he has never lived, worked, had a business office, or solicited business in Vermont.  (Paper 14 at ¶¶ 1, 2 and 6). Stoddard further states that while working on the Traudt matter, he was employed by Hull & Cargo Surveyors, Inc., a Massachusetts corporation with a principal place of business in Raynham, Massachusetts. Id. at ¶ 4.  In April, 1999, Hull & Cargo Surveyors, Inc. was dissolved, whereupon Stoddard went to work for defendant ITS, a Delaware corporation with its headquarters in Springfield, Missouri. Id. at ¶ 5.  Stoddard explains that ITS has never been involved with Traudt's compensation claim, that ITS does not maintain an office in Vermont, and that Stoddard himself never had contact with Traudt while Traudt was in Vermont. Id. at ¶¶ 5 and 13.

Traudt's argument that Trawlers' contacts are

16

attributable to other defendants does not aid his effort
to show personal jurisdiction over those defendants, if
only because, as set forth above, Trawlers' contacts are
insufficient.  Furthermore, the Stoddard affidavit makes
clear that he has had no purposeful business contacts
with Vermont.  Indeed, there is no indication in the
parties' submissions that either Stoddard or ITS has the
sort of continuous and systematic contacts with Vermont
that would allow this Court to exercise personal
jurisdiction over them.  Accordingly, Stoddard and ITS
are dismissed without prejudice for lack of personal
jurisdiction.

    D.  Sunderland

    Finally, the facts before the Court do not support
the exercise of personal jurisdiction over defendant
Sunderland.  According to the affidavit of Janet M.
Cook, Sunderland is a British company with a principal
place of business in England.  (Paper 18 at ¶ 2).  It
has never conducted business in the State of Vermont,
never solicited business here, never had an office here,
and never consented to be sued here.  Id. at ¶¶ 3, 4 and
9.  Despite these facts, Traudt claims that jurisdiction

17

in Vermont is proper because Sunderland has an Internet
website and advertises its aquiculture insurance
business on the Internet.  Traudt further argues that
there is aquiculture activity in Vermont and that,
therefore, there is a potential for "hits" on
Sunderland's website from within Vermont, and for
Sunderland to do business in Vermont.  (Paper 26 at 9,
14).

With respect to Sunderland's Internet presence, the
mere fact that Sunderland advertises and has a website
that is accessible nationally, and perhaps
internationally, is insufficient to show that Sunderland
is purposefully reaching out to the State of Vermont in
a way that would subject it to the jurisdiction of
Vermont courts.  See GTE New Media Servs. v. BellSouth
Corp., 199 F.3d 1343, 1350 (D.C. Cir. 2000) ("Personal
jurisdiction surely cannot be based solely on the
ability . . . to access the defendants' web sites, for
this does not by itself show any persistent course of
conduct by the defendants."); Bensusan Rest. Corp v.
King, 937 F. Supp. 295, 301 (S.D.N.Y. 1996), aff'd, 126
F.3d 25 (2d Cir. 1997) ("Creating a site, like placing a

18

product into the stream of commerce, may be felt

nationwide – or even worldwide – but, without more, it

is not an act purposefully directed toward the forum

state); <u>Cybersell, Inc. v. Cybersell, Inc.</u>, 130 F.3d

414, 418 (9th Cir. 1997) ("[S]o far as we are aware, no

court has ever held that an Internet advertisement alone

is sufficient to subject the advertiser to jurisdiction

in the plaintiff's home state.").  While highly

interactive websites may present a valid argument for

personal jurisdiction, Traudt has merely alleged that

Sunderland advertises and maintains a passive web page

and advertisements containing information about its

business.  <u>See</u> <u>Mink v. AAAA Development, LLC</u>, 190 F.3d

333, 336 (5th Cir. 1999) (citing <u>Zippo Mfg., Inc. v.</u>

<u>Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119, 1124 (W.D. Pa.

1997) (at one end of spectrum is active website where

defendant clearly does business by entering into

contracts with residents of forum state which involve

knowing and repeated transmission of computer files,

while other end of spectrum is passive website that does

nothing more than advertise)).  Sunderland's Internet

presence, therefore, does not provide grounds for the

19

exercise of personal jurisdiction in Vermont.

The fact that Sunderland might someday provide insurance to aquiculture establishments in Vermont also falls far short of the required showing. Traudt alleges that Vermont has eight registered aquiculture farms, and that Sunderland provides insurance for aquiculture. Traudt does not, however, connect Sunderland to Vermont aquiculture. (Paper 26 at 5). Moreover, Sunderland has provided the affidavit of Janet Cook, which states plainly that Sunderland has never done business in Vermont. (Paper 18 at ¶ 3). Even viewing the affidavits in a light most favorable to the plaintiff, this evidence makes clear that there is currently no basis for exercising personal jurisdiction over Sunderland in Vermont.

III.  Reasonableness

In addition to the fact that none of the defendants has sufficient "minimum contacts" to establish personal jurisdiction in Vermont, litigating this case in Vermont would be unreasonable. See Asahi, 480 U.S. at 113 (listing factors for establishing whether exercise of jurisdiction would be reasonable). First, litigation in

20

Vermont would place a burden on the out-of-state
defendants, with the greatest burden weighing on British
defendant Sunderland.  Admittedly, when viewed against
Traudt's interest in achieving convenient and effective
relief, it is hard to say that the burden on the other
New England defendants far outweighs Traudt's interest
in having the case heard in Vermont.  However, in the
context of the remaining factors, compelling any of the
defendants to litigate in Vermont would not be
reasonable.

Under the second consideration mandated by Asahi,
Vermont's interest in adjudicating this case is minimal.
While this Court generally seeks to protect Vermont
citizens, and federal courts are generally open to
seamen to adjudicate their rights under admiralty law,
the alleged incidents in question, from the initial
injury to the subsequent conspiracy, all occurred
outside of Vermont.  Furthermore, when most of these
incidents took place, none of the parties was present
in, resided in, or did business in Vermont.  It is also
presumable that most witnesses and relevant documents in
this case are currently outside the State of Vermont.

21

Accordingly, hearing this case in Vermont will not serve the judicial system's interest in obtaining the most efficient resolution of the controversy.  For these reasons, it would not be reasonable to declare that the defendants are subject to personal jurisdiction in this forum.[4]

CONCLUSION

It is therefore ORDERED that the defendants' motions to dismiss (Papers 11 and 21) are GRANTED, and that this case is DISMISSED without prejudice for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

Dated at Burlington, in the District of Vermont, this 2nd day of October, 2003.

William K. Sessions III
Chief Judge, United States District Court

---

[4] Because the Court finds that it has no personal jurisdiction over the defendants, it need not reach the defendants' allegations of inadequate service.